UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **TAQUAN SKEEN**<br>**Plaintiff,**<br>v.<br>**FIFTH THIRD BANK, et al.,**<br>**Defendants.** | **Civil Action No. 26-11078-BEM** |

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION TO DISMISS**

**MURPHY, J.**

Plaintiff Taquan Skeen brings this action alleging five violations of the Fair Credit Reporting Act ("FCRA") and one violation of the Massachusetts Consumer Protection law against Defendants Fifth Third Bank ("Fifth Third"), Equifax Information Services LLC ("Equifax"), Trans Union LLC ("Trans Union"), and Experian Information Solutions Inc. ("Experian"). Before the Court is Fifth Third's motion to dismiss all claims against it: failure to reasonably investigate Skeen's FCRA dispute (Count I), willful noncompliance with the FCRA (Count IV), negligent noncompliance with the FCRA (Count V), and unfair and deceptive practices under Massachusetts law (Count VI). For the reasons set forth below, the Court will grant Fifth Third's motion to dismiss on all counts.

## I. Background

### A. Factual Background

The Court draws the following facts from Skeen's complaint, Dkt. 1 ("Complaint" or "Compl."), and accepts them as true for purposes of the instant motion.

Fifth Third is a furnisher of information to consumer reporting agencies under 15 U.S.C. § 1681s-2 ("section 1681s-2"). *Id.* Equifax, Trans Union, and Experian (collectively, the "credit reporting agencies" or "CRAs") are credit reporting agencies under 15 U.S.C. § 1681a(f). *Id.* On November 19, 2024, Skeen opened an installment loan with Fifth Third. *Id.*; *see also* Dkt. 1-2 at 10–14. On October 31, 2025, the account was charged off with a written-off principal balance of approximately $27,749.98. Compl. at 1; *see also* Dkt. 1-2 at 14. Following the charge off, Plaintiff's Experian account still listed a balance of $29,096. Dkt. 1-2 at 1.

On December 1, 2025, Skeen submitted a complaint to the Consumer Financial Protection Bureau ("CFPB") alleging that Experian reported various errors on his credit report.[1] Dkt. 1-2 at 2–3. His complaint to the CFPB alleged, specifically, that Experian improperly reported both a charge off and ongoing balance at the same time, reported past-due amounts after charge off, added new late marks after charge off, included conflicting status codes, listed inconsistent dates, and reported a written-off amount inconsistent with the reported balance. *Id.* Fifteen days after submitting his CFPB complaint, Plaintiff received a letter from Fifth Third. Dkt. 1-2 at 8. In the letter, Fifth Third stated:

> We have completed our review of the payment history for your installment loan. . . . We regret any frustration this may cause you; however, we are required to report accurate information, and we cannot accommodate your request to change prior negative reporting, in cases where no bank error occurred. . . .
>
> Our review of your installment loan determined that the account was charged off on October 31, 2025. Please note, a charge off is an internal accounting procedure that banks follow for delinquent accounts. It does not mean the debt has been forgiven or canceled. . . . Please find enclosed a copy of the notice entitled, *Your Payoff Information*, which was mailed to you . . . advising you of the outstanding balance for the loan. The notice details the principal balance, reflected as the charge

[1] In addition to submitting a CFPB complaint, Plaintiff disputed the alleged inaccuracies directly with the CRAs. Compl. at 1.

> off amount on your credit report, as well as the total balance owed, which includes accrued interest, late charges, and other fees.

*Id.* Skeen alleges that while Fifth Third investigated his complaint, Fifth Third "refused correction while acknowledging the charge-off status," and the "CRAs continued reporting inaccurate information following notice." Compl. at 1.

**B. <u>Procedural Background</u>**

Skeen filed his Complaint on March 2, 2026, claiming Defendants violated the FCRA by reporting inaccurate information following his charge off status. *Id.* at 1. Experian, Trans Union, and Equifax each filed motions to dismiss or for judgment on the pleadings, Dkts. 20–21; Dkt. 28; Dkt. 36–37, which Skeen failed to oppose, *see* Dkts. 26, 29, 40. As a result, all three CRAs were dismissed from the present action for Skeen's failure to prosecute. Dkt. 44. On September 11, 2026, Fifth Third filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 41. Skeen filed an opposition to Fifth Third's motion on September 14, 2026. Dkt. 43.

## II. <u>Legal Standard</u>

Courts analyzing claims under Rule 12(b)(6) must determine whether a plaintiff's factual allegations—disregarding all "conclusory" statements—"state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In making its determination, a court must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012). At the pleading stage, plaintiffs need not demonstrate that they are likely to prevail, but the "claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *García-Catalán v. United States*, 734 F.3d 100, 102–03 (1st Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "The inquiry is usually limited to

the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice," *Whelden v. U.S. Bank Nat'l Ass'n*, 494 F. Supp. 3d 68, 73 (D. Mass. 2020) (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)), "but the court may also consider other documents the authenticity of which is not disputed by the parties, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint," *id.* (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

"[T]he fact that the plaintiff filed the complaint pro se militates in favor of a liberal reading [of his complaint]." *Rodi v. S. New Eng. Sch. of L.*, 389 F.3d 5, 13 (1st Cir. 2004) (citing *Boivin v. Black*, 225 F.3d 36, 43 (1st Cir. 2000) (explaining that "courts hold pro se pleadings to less demanding standards than those drafted by lawyers")). However, "pro se status does not insulate a party from complying with procedural and substantive law." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). A district court's duty to liberally construe a pro se litigant's pleadings does not permit the court "to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979); *accord Vieira v. De Souza*, 22 F.4th 304, 311 (1st Cir. 2022) ("A district court should not assume the role of advocate for the pro se litigant, and may not rewrite a petition to include claims that were never presented." (cleaned up) (*Barnett v. Hargett*, 174 F.3d 1128, 1132 (10th Cir. 1999))).

## III. Discussion

### A. FCRA Claims

#### 1. Standing

Fifth Third moves to dismiss Skeen's FRCA claims for lack of Article III standing. Dkt. 42 at 7–8. In its own motion to dismiss, which Fifth Third incorporates,[2] Experian argues that "Plaintiff does not identify a single creditor that denied him credit, a single application he submitted, a specific date on which any denial occurred, or any specific credit term he was denied because of the challenged Fifth Third Bank reporting." Dkt. 21 at 11. Therefore, Fifth Third argues, Skeen has failed to allege a concrete injury necessary to establish Article III standing. Dkt. 42 at 7–8.

Article III standing requires a plaintiff to show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). In an FRCA claim, a concrete injury may be "intangible," but that "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Importantly, a plaintiff alleging injury under the FCRA, "cannot satisfy the demands of Article III by alleging a bare procedural violation." *Id.* at 331. Ultimately, "an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's

[2] In its motion to dismiss, Fifth Third asserts that it "incorporates Experian's argument contained in its Motion to Dismiss that Plaintiff fails to allege any concrete harm sufficient to satisfy Article III's standing requirements." Dkt. 42 at 7 (citing Dkt. 21 at 10–13).

suffering concrete harm because of the defendant's violation of federal law." *TransUnion*, 594 U.S. at 426–27.

Courts in this District have previously dismissed FCRA claims for lack of standing where plaintiffs raise conclusory allegations devoid of specific factual support. *See, e.g.*, *Verlus v. Experian Info. Sols., Inc.*, 2025 WL 836588, at *3 (D. Mass. Mar. 17, 2025) ("[D]espite alleging that he has suffered 'loss of credit opportunities,' the complaint contains no factual allegations to permit an inference that any credit disadvantage has materialized or at substantial risk of materializing due to the alleged inaccuracies the credit reports."); *St. Pierre v. Aidvantage Off. Customer Advoc.*, 2026 WL 915084, at *5 (D. Mass. Mar. 31, 2026) (finding Plaintiff's conclusory allegations of harm to creditworthiness and denied access financing lacked sufficient factual support to confer standing). Here, Skeen has failed to establish standing for these same reasons.

It is true that "denial of credit opportunities," "higher interest rates," "loss of housing and financing opportunities," "emotional distress," and "reputational harm," Compl. at 2, are injuries the FCRA seeks to redress, *see Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1194 (7th Cir. 2021) (explaining that "[a]n FCRA violation may inflict pecuniary harm, like lost income or out-of-pocket expenses caused by denials of credit" and also "[n]onpecuniary harms, including reputational damage and emotional distress"); *cf. Physician's Healthsource, Inc. v. Vertex Pharms. Inc.*, 247 F. Supp. 3d 138, 149 (D. Mass. 2017) ("Failure to ensure the accuracy of a consumer report may result in harm or material risk of harm the FCRA was intended to curb . . . for example, . . . a decrease in the consumer's creditworthiness."). However, these allegations, without any supporting facts, are purely conclusory and cannot permit an inference that Skeen suffered a concrete injury. *See St. Pierre*, 2026 WL 915084, at *5 ("Plaintiff's conclusory allegations are

insufficient to confer standing."). Accordingly, Skeen's FCRA claims must be dismissed for lack of standing.

### 2. Notice Requirement

Even if Skeen had established Article III standing, his FCRA claims against Fifth Third independently fail for lack of notice to Fifth Third. Skeen alleges in Count I that Fifth Third violated 15 U.S.C. § 1681s-2(b) ("section 1681s-2(b)") by failing to conduct a reasonable investigation and verifying inaccurate data. Compl. at 2. Fifth Third moves to dismiss Count I because furnisher liability under the FCRA is dependent on the furnisher receiving notice of the dispute from a CRA, and Skeen pleads no facts suggesting that Fifth Third received such notice. Dkt. 42 at 5–7.

Under the FCRA, consumers may report credit report disputes to either CRAs or furnishers. *See Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010). However, furnishers cannot be liable for failure to investigate under section 1681s-2(b) if they receive notice from consumers directly. *Id.* ("[A] consumer may dispute information directly to a furnisher, . . . the consumer has no private right of action if the furnisher does not reasonably investigate the consumer's claim after direct notification."). Rather, furnishers' obligations under the FCRA are only triggered if they receive notice of a consumer's dispute from a CRA. *Id.* at 35–36.

Here, Skeen claims he disputed inaccurate information with the CRAs and the CFPB. Compl. at 1.[3] However, Skeen's Complaint includes no facts that suggest any CRA

---

[3] In its memorandum supporting its motion to dismiss, Fifth Third states, "Plaintiff alleges that he submitted a direct dispute to Fifth Third and attaches a copy of the response." Dkt. 42 at 7. However, nowhere in Skeen's Complaint does he claim to have submitted a dispute to Fifth Third directly. *See* Compl. Rather, Skeen claims that he submitted disputes to the CRAs and CFPB directly. *Id.* at 1. Skeen attaches with his Complaint a copy of Fifth Third's response to the dispute, which clearly states that they "received a copy of the complaint [Skeen] submitted to the [CFPB]." Dkt. 1-2 at 8. At the motion to dismiss stage, the Court accepts the allegations in Skeen's Complaint as true and assumes that disputes were raised with the CRAs and CFPB.

notified Fifth Third of the FCRA dispute. Skeen does provide a letter from Fifth Third acknowledging it received notice of the dispute and reviewed the matter. Dkt. 1-2 at 8. Yet, Fifth Third's letter explicitly says that they received notice of the dispute from the CFPB, not one of the CRAs. *See id.* In his opposition to Fifth Third's motion to dismiss, Skeen attempts to defend his section 1681s-2(b) claim by emphasizing that he "disputed the Fifth Third reporting through a consumer reporting agency," but that Fifth Third "nevertheless verified or continued furnishing the challenged information" without providing a reasonable investigation. Dkt. 43 at 2. Even if it is true that (1) Skeen reported the dispute through a CRA, and (2) Fifth Third had notice of the dispute, Skeen still fails to allege that one of the CRAs was responsible for putting Fifth Third on notice, especially given that the letter from Fifth Third references receiving notice from the CFPB. *See* Dkt. 1-2 at 8. Therefore, Skeen has no private right of action under section 1681s-2(b) to make a claim against Fifth Third.

Counts IV and V of Skeen's Complaint necessarily fail alongside his section 1681s-2(b) claim. Skeen brings separate claims in Count IV for willful noncompliance under 15 U.S.C. § 1681n ("section 1681n") and Count V for negligent noncompliance under 15 U.S.C. § 1681o ("section 1681o"). Compl. at 2. Sections 1681n and 1681o impose liability for the failure to "comply with any requirement imposed under this subchapter." 15 U.S.C § 1681n(a); 15 U.S.C. § 1681o(a). Accordingly, noncompliance claims are not available unless plaintiffs can point to noncompliance with a specific requirement imposed by the FCRA. *See Islam v. Option One Mortg. Corp.*, 432 F. Supp. 2d 181, 185 (D. Mass. 2006) (explaining that consumers can assert willful or negligent noncompliance claims against furnishers to enforce statutory duties under section 1681s-2(b)). Here, Fifth Third's purported liability for noncompliance rests on Skeen's section 1681s-2(b) claim. Having found that Fifth Third could not have violated this statutory

duty without first receiving notice from a CRA, *see supra* Section III.A.1, the Court cannot find that Fifth Third was either negligently or willfully noncompliant with any statutory duty. Accordingly, the Court dismisses Counts I, IV, and V.

**B. Chapter 93A Claim**

Skeen alleges in Count VI that Fifth Third engaged in "unfair and deceptive practices" under Mass. Gen. Laws ch. 93A ("Chapter 93A") by continuing to furnish inaccurate information after receiving notice of the dispute. Compl. at 2. Fifth Third moves to dismiss Count VI on the ground that chapter 93A claims are preempted by the FCRA.[4] Dkt. 42 at 10.

The FCRA contains a provision expressly preempting any state laws which address areas already covered by section 1681s-2: "No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F). Courts in this District routinely dismiss claims of furnishers engaging in unfair and deceptive practices under Chapter 93A as preempted by the FCRA. *See Catanzaro v. Experian Info. Sols., Inc.*, 671 F. Supp. 2d 256, 262 (D. Mass. 2009) (finding Plaintiff's Chapter 93A claims preempted by the FCRA where alleged unlawful conduct, including inaccurate credit reporting and failure to investigate disputes, "constitutes precisely the kind of conduct" FCRA intends to regulate); *Leet v. Cellco P'ship*, 480 F. Supp. 2d 422, 434 (D. Mass. 2007) (finding Plaintiff's Chapter 93A claim based on furnisher's alleged inaccurate reporting of credit information preempted because claim "directly relate[d] to the subject matter of § 1681s-2").

[4] Skeen does not acknowledge Fifth Third's preemption argument in his opposition to Fifth Third's motion to dismiss. *See generally* Dkt. 43.

Here, Skeen alleges that by providing CRAs with "inaccurate information after notice," Fifth Third engaged in "unfair and deceptive practices." Compl. at 2. These allegations directly relate to the subject matter Congress sought to regulate under section 1681s-2. 15 U.S.C. § 1681s-2(a)(1)(B)(i) ("A person shall not furnish information relating to a consumer to any consumer reporting agency if . . . the person has been notified by the consumer . . . that specific information is inaccurate."). Skeen's Chapter 93A claim is therefore preempted by 15 U.S.C. § 1681t(b)(1)(F). Accordingly, the Court grants Fifth Third's motion to dismiss Count VI.

### C. Leave to Amend

Skeen requests leave to amend his Complaint if the Court grants Fifth Third's motion to dismiss. Dkt. 43 at 3. However, for the reasons set forth above, any amendment to Skeen's Complaint would be futile as a matter of law. Even if Skeen could amend his Complaint to repair the standing defects, he could not change the fact that Fifth Third did not receive notice from a CRA directly. *See supra* Section III.A.2. Without that essential step in the dispute process, Skeen has no private right of action against Fifth Third under section 1681s-2(b), regardless of the purported inaccuracies in his report. Accordingly, the Court declines to grant Skeen leave to amend.

## IV. Conclusion

For the foregoing reasons, Fifth Third's motion to dismiss is GRANTED.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court

Dated: November 16, 2026